# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL L. MARASIGAN,<br>JOSE ARTHUR "ART" D. CHAN, JR., and<br>CHRISTINE C. CHAN,<br><br>Defendants. | CRIMINAL CASE NO. 23-00014<br><br>**DECISION AND ORDER DENYING<br>MOTIONS FOR JUDGMENT OF<br>ACQUITTAL AND NEW TRIAL<br>(ECF NOS. 547, 554, 557)** |

Before the court are Defendant Jose Arthur "Art" D. Chan, Jr.'s Motion for New Trial Under Rule 33, ECF No. 547, and Motion for Judgment of Acquittal Under Rule 29 and Motion for New Trial Under Rule 33, ECF No. 554. These motions were joined by Defendants Michael L. Marasigan and Christine C. Chan. ECF Nos. 550, 555-56, 558. Also before the court is Defendant Marasigan's Motion for Acquittal or in the Alternative for Evidentiary Hearing and New Trial. ECF No. 557. This motion was joined by Defendant Art Chan. ECF No. 561. The court has reviewed the record and the relevant case law and deems these motions suitable for submission without oral argument. For the reasons stated below, the court hereby **DENIES** the motions in full.

I. **Procedural Posture and Factual Background**[1]

On May 10, 2023, a federal grand jury indicted seven defendants, Michael L. Marasigan, Jose Arthur "Art" D. Chan, Jr., Alfredo D. Leon Guerrero, Christine C. Chan, Juanita Capulong, Minda C. San Nicolas, and Richard C. Brown, on sixty-four counts. Indictment, ECF No. 1. The indictment charged all defendants with one count of conspiracy to operate illegal gambling business, in violation of 18 U.S.C. §§ 371, 1955(a), and one count of money laundering conspiracy, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(B)(i), 1957. *Id.* at 1-7. The indictment also charged five of the defendants with sixty-two counts of money laundering, in violation of 18 U.S.C. §§ 1957, 2. *Id.* at 1, 7-14. Relevant here, Defendant Marasigan was charged with sixty-two counts of money laundering, Defendant Christine Chan was charged with twenty-four counts of money laundering, and Defendant Art Chan was not charged with money laundering. *Id.* at 7-14. Co-defendants Leon Guerrero, Capulong, and San Nicolas pleaded guilty on August 20, November 13, and November 7, 2023, respectively, and Defendant Brown passed away on April 4, 2024, resulting in the court dismissing the charges against him on May 24, 2024. *See* ECF Nos. 77, 80, 82, 87-88, 160-61, 204, 209, 232.

On October 2, 2024, a grand jury returned a superseding indictment charging Defendants Marasigan, Art Chan, and Christine Chan, with a sixty-fifth count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349, 1343, and modifying certain money laundering charges to include conspiracy to commit wire fraud as a specified unlawful activity. *See* Superseding Indictment at 1, 11-17, ECF No. 212. All the charges arise out of the Guam Shrine Club's establishment of Hafa Adai Bingo to conduct bingo games for the stated charitable purpose of transporting children to Shriner's Hospitals for Children in Hawai'i for medical care. *Id.* at 3.

---

[1] Page citations throughout this Decision and Order refer to CM/ECF-generated page numbers.

Jury selection commenced on March 13, 2025, and trial began on March 18, 2025.[2] *See* Mins., ECF No. 377. After the Government rested its case on May 1, 2025, all defendants orally moved for judgment of acquittal on May 2, 2025. *See* ECF Nos. 511, 523. The court denied the motions with respect to Counts 1 to 64 but held the motions under advisement for Count 65. *See* ECF Nos. 519, 523; *see also* ECF Nos. 509-10, 513-15, 517. On May 5, 2025, the court denied the remaining motions. *See* Mins., ECF No. 523. Thereafter, the defendants rested without putting on evidence. *Id.*

Closing statements were given by all parties on May 6, 2025, and the Government gave a rebuttal statement on May 7, 2025.[3] *See* ECF Nos. 524, 525. The court read closing jury instructions on May 7, 2025, and the jury retired to deliberate the same day. Mins., ECF No. 525; *see also* ECF Nos. 526-27. After about five days of deliberating, the jury returned its verdict on May 13, 2025, finding the three defendants guilty on all counts.[4] Mins., ECF No. 533; *see also* ECF Nos. 535-37. The court discharged the jury thereafter. Mins., ECF No. 533.

Also relevant to this Decision and Order, the jurors gave a thank-you card to a Clerk's Office staff member who then provided it to the undersigned on May 7, 2025, before the jury retired to deliberate but after court was adjourned. *See* Clerk's Notice, ECF No. 539. The thank-you card consists of a colored-in heart and flowers and is addressed to the undersigned judge and

---

[2] Unlike Defendants Art and Christine Chan, Defendant Marasigan's counsels opted to reserve their client's opening statement. However, at the close of the Government's case, counsels decided to rest their case and only gave a closing statement. *See* ECF No. 403, 523, 542.

[3] Although jury selection began on March 13, 2025, and closing statements concluded on May 7, 2025, trial was in session for about sixteen days because of mid-trial motions to continue, mid-trial motions to disqualify the undersigned, and a mid-trial oral motion to withdraw as counsel. *See* ECF Nos. 377, 403, 405, 410, 415, 440, 441, 453, 470, 475, 479, 482, 492, 496, 501, 504, 511, 519, 523-25.

[4] Defendants Marasigan and Christine Chan requested to poll the jurors on their verdicts, but Defendant Art Chan declined to do so. Mins., ECF No. 533.

four Clerk's Office staff members: the jury administrator, courtroom deputies, and court reporter. *See id.* The card is from "The Best Jurors" and dated "Feb 25 - Eternity."[5] The jurors also individually signed the card, and many wrote short messages expressing their gratitude for "care and kindness," "generosity and care," and "hospitality" during their service. *Id.* The court disclosed the thank-you card to the parties at the next hearing on May 13, 2025, and made the card available for inspection before the Clerk's Office scanned and docketed it. *See* Tr. at 4:5-4:16, ECF No. 541; Clerk's Notice, ECF No. 539.

On May 27, 2025, Defendant Art Chan filed a Motion for New Trial Under Rule 33, ECF No. 547, which was joined by Defendants Marasigan and Christine Chan.[6] ECF Nos. 550, 555. On May 30, 2025, Defendant Art Chan filed a Motion for Acquittal Under Rule 29 and Motion for New Trial Under Rule 33, ECF No. 554, which was also joined by Defendants Marasigan and Christine Chan.[7] ECF Nos. 556, 558. Also on May 30, 2025, Defendant Marasigan filed a Motion for Acquittal or in the Alternative for Evidentiary Hearing and New Trial, ECF No. 557, which was joined by Defendant Art Chan. ECF No. 561. The Government opposed each of these motions, ECF Nos. 562, 566-67, and Defendants Arthur Chan and Marasigan filed replies. ECF Nos. 568, 572-73. Pending disposition of these motions, Defendants Marasigan, Art Chan, and Christine Chan are scheduled to be sentenced on November 3, 2025.[8] Order, ECF No. 578.

---

[5] February 25, 2025, is the date that the jurors' terms of service began when they were summoned to appear for orientation.

[6] Defendant Christine Chan joined all but the first full paragraph on page nine of the motion. ECF No. 555.

[7] The court granted the defendants' extensions of time to file certain post-trial motions. *See* ECF Nos. 544, 546, 549.

[8] The original date of sentencing was August 14, 2025, *see* Order, ECF No. 538, but the hearing was continued to November 3, 2025, at the request of the U.S. Probation Office to allow "additional time to conduct the presentence investigation, specifically, the review of voluminous discovery documents consisting of 24,000 pages." *See* Order, ECF No. 578.

## II. Defendant Marasigan's Absence

Before turning to the pending motions, the court notes that as of the date of this Decision and Order, Defendant Marasigan has failed to return to Guam from the Philippines in violation of this court's order that he do so by June 20, 2025. *See* ECF Nos. 576, 579; *see also* ECF No. 553. On August 14, 2025, the Government filed supplemental authority in support of its opposition to Defendant Marasigan's post-trial motions, arguing that the court should invoke the fugitive disentitlement doctrine and deny the pending motion on that ground. Brief, ECF No. 592.

Under Federal Rule of Criminal Procedure 43(a), a defendant must be present at certain stages of criminal proceedings, including at trial and sentencing. FED. R. CRIM. P. 43(a)(2)-(3); *see also United States v. Ornelas*, 828 F.3d 1018, 1021 (9th Cir. 2016). And "[t]he Supreme Court has recognized that 'the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant." *La Crosse v. Kernan*, 244 F.3d 702, 707-08 (9th Cir. 2001) (quoting *Rushen v. Spain*, 464 U.S. 114, 118 (1983)); *see also Illinois v. Allen*, 397 U.S. 337, 388 (1970). However, this rule does not apply to the resolution of post-trial motions, particularly where the defendant is voluntarily absent. *See* FED. R. CRIM P. 43(a) advisory committee's note to 1944 amendment (citing *United States v. Lynch*, 132 F.2d 111 (3d Cir. 1942)). Although the court agrees with the Government that there may be grounds upon which it can invoke the fugitive disentitlement doctrine to deny Defendant Marasigan's post-trial motions, it declines to do so here. Therefore, Defendant Marasigan's presence is not required for the court to resolve his outstanding motion.[9]

---

[9] The court does, however, agree with the Government that Defendant Marasigan may be sentenced *in absentia*. Brief at 2 n.1, ECF No. 592 (citing *United States v. Ornelas*, 828 F.3d 1018, 1021-22 (9th Cir. 2016)); *see also* FED. R. CRIM. P. 43(c)(1)(B); *see also See* FED. R. CRIM P. 43(a) advisory committee's note to 1944 amendment (citing

1    **III.    Legal Standards**

2        **A.  Motion for Judgment of Acquittal**

3        Under Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must

4    enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a

5    conviction." FED. R. CRIM. P. 29(a). Motions for judgment of acquittal must be brought or

6    renewed "within 14 days after a guilty verdict, or after the court discharges the jury, whichever is

7    later." FED. R. CRIM. P. 29(c)(1). If the jury returned a guilty verdict, the court may set aside that

8    verdict. FED. R. CRIM. P. 29(c)(2).

9        The court reviews motions for judgment of acquittal under a sufficiency-of-the-evidence

10    standard, i.e., "evidence supports a conviction, if, viewed in the light most favorable to the

11    government, it would allow any rational trier of fact to find the essential elements of the crime

12    beyond a reasonable doubt." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (quoting

13    *United States v. Stoddard*, 150 F.3d 1140, 1144 (9th Cir. 1998)); *see also United States v. Nevils*,

14    598 F.3d 1158, 1163-64 (9th Cir. 2010) (discussing two-step inquiry for considering challenges

15    to sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In ruling

16    on a Rule 29(c) motion, a district court must bear in mind that 'it is the exclusive function of the

17    jury to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw

18    reasonable inferences from proven facts.'" *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir.

19    1977), *supplemented by* 574 F.2d 476 (9th Cir. 1978), (quoting *United States v. Nelson*, 419 F.2d

20    1237, 1241 (9th Cir. 1969)); *see also United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201-

21    02 (9th Cir. 2000) ("[A]ny conflicts in the evidence are to be resolved in favor of the jury's

22

23    *United States v. Lynch*, 132 F.2d 111 (3d Cir. 1942)); FED. R. CRIM. P. 43(b) advisory committee's note to 1995
amendment (explaining that "[d]elay in conducting the sentencing hearing under such circumstances may result in
24    difficulty later in gathering and presenting the evidence necessary to form a guideline sentence").

1 verdict."). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence

2 challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

3     **B. Motion for New Trial**

4       Under Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court

5 may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R.

6 CRIM. P. 33(a). A district court's authority to grant a new trial is broader than its authority to

7 grant a motion for judgment of acquittal. *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir.

8 1992). "The court is not obliged to view the evidence in the light most favorable to the verdict,

9 and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses."

10 *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *Alston*, 974 F.2d at

11 1211). Nonetheless, a new trial "should be granted 'only in exceptional cases in which the

12 evidence preponderates heavily against the verdict.'" *United States v. Pimentel*, 654 F.2d 538,

13 545 (9th Cir. 1981) (citation omitted). Before granting a motion for new trial, the court must

14 conclude that "a serious miscarriage of justice may have occurred." *Alston*, 974 F.2d at 1211-12.

15 **IV. Discussion**

16     **A. Motions for Judgment of Acquittal**

17       Defendant Marasigan moves for judgment of acquittal on Count 1, Conspiracy to Operate

18 Illegal Gambling Business, arguing that the Government "failed to submit sufficient evidence or

19 legal argument allowing the Jury or Court to reasonably conclude that bingo is illegal on Guam."

20 Mot. at 2-3, ECF No. 557. The motion is joined by Defendant Art Chan. ECF No. 561.

21 Defendant Art Chan also moves for a judgment of acquittal on Count 65, Conspiracy to Commit

22 Wire Fraud, on two grounds: (1) the Government presented no evidence that established Art

23 Chan contemplated or caused actual harm to any alleged victims, and (2) "no reasonable jury

24 based on the evidence presented could have found that a misrepresentation occurred." Mot. at 5-

8, ECF No. 554. This motion is joined by Defendants Marasigan and Christine Chan. ECF Nos. 556, 558.

### 1. Conspiracy to Operate Illegal Gambling Business

First, for the jury to have found the defendants guilty of conspiracy to operate illegal gambling business, it had to find that the Government proved each of the following elements beyond a reasonable doubt:

> First, beginning on or about March 2015, and ending on or about December 31, 2021, there was an agreement between two or more persons to operate illegal gambling business as charged in the superseding indictment;

> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

> Third, one of the members of the conspiracy performed at least one overt act on or after March 2015 for the purpose of carrying out the conspiracy.

Jury Instr. No. 9, ECF No. 527; *see also* 18 U.S.C. § 371. The court instructed the jury on the elements of 18 U.S.C. § 1955(a), as the object of the conspiracy. Jury Instr. at 13, ECF No. 527. The second element stated: "Second, that the bingo games are illegal gambling in Guam." *Id.* That same instruction included the following:

> As to the second element, gambling is illegal on Guam if a person (1) makes or accepts a wager involving money or anything of monetary value upon the result of a game or contest, or (2) holds any money or anything of monetary value which he knows has been wagered in violation of (1).

> "Bingo games" means a specific game of chance, commonly known as "bingo," in which prizes are awarded on the basis of designated numbers or symbols on a card conforming two numbers or symbols selected at random.

Jury Instr. No. 10, ECF No. 527. The substance of these definitions derives from 9 GUAM CODE ANN. §§ 64.10(a), 64.70(f)(1). Immediately after this instruction, the court instructed the jury on

the defendants' affirmative defense, which was based on 9 GUAM CODE ANN. § 64.70(a):

> Even if you find that the Government has proven each of the elements in Court's Instruction No. 9 beyond a reasonable doubt, you must find the defendant not guilty if the defendant proves by a preponderance of the evidence:
>
> First, the gambling activities were sponsored, promoted, and conducted by the Guam Shrine Club, and
>
> Second, the Guam Shrine Club was issued a permit by the Director of the Department of Revenue and Taxation to conduct such activities.
>
> A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true. This is a lesser burden of proof than the government's burden to prove beyond a reasonable doubt each element of conspiracy to operate illegal gambling.

Jury Instr. No. 14, ECF No. 527; *see also* Jury Instr. Nos. 12-14, ECF No. 527 (defining "sponsored," "conducted," and "promoted"); Jury Instr. No. 15, ECF No. 527 (instructing jurors on the duration of permits to conduct gambling activities).

Defendant Marasigan argues that the Government did not provide sufficient evidence for the jury to conclude that bingo is illegal in Guam. Mot. at 1-3, ECF No. 557. This argument relies on two arguments previously addressed by the court: (1) that bingo is not illegal gambling in Guam, and (2) that the Government cannot prove that gambling is illegal in Guam by introducing evidence of issues in the permitting process. *See* Mot. at 2, ECF No. 557. In opposition, the Government accurately recites the content of the jury instructions, emphasizing the definition of illegal gambling provided above and noting that the jury considered and rejected this affirmative defense. Opp'n at 1-2, ECF No. 567. However, the Government's analysis stops there. Defendant Marasigan picks up on this but does not sufficiently address the fact that the jury was instructed on the types of gambling activities made illegal under 9 GUAM CODE ANN. § 64.10(a). Reply, ECF No. 573.

1    What the Government quotes, but does not make explicit, is that the jury was clearly

2    instructed on how to find whether bingo games are illegal gambling in Guam. *See* Jury Instr. No.

3    10, ECF No. 527; *see also* 9 GUAM CODE ANN. §§ 64.10(a), 64.70(f)(1). The instruction

4    informed the jury of how to evaluate whether the gambling activities involved making or

5    accepting "a wager involving money or anything of monetary value upon the result of a game or

6    contest" or involved holding "any money or anything of monetary value" known to be wagered

7    upon the result of a game or contest. *See* Jury Instr. No. 10, ECF No. 527. If the jury found one

8    or both conditions from the evidence, then it could properly find that the gambling activities

9    were illegal in Guam. *See also* 9 GUAM CODE ANN. § 64.10. The Government introduced

10   exhibits, and all parties elicited testimony that supports this conclusion. For example, bingo

11   players Geraldine Borja and Marie Pinaula Leon Guerrero Duenas testified about paying the

12   Guam Shrine Club to play bingo games, about actually playing bingo games at Hafa Adai Bingo,

13   and about the possibility of winning or losing money as a result. *E.g.*, Tr. at 6:14-7:15, 12:19-

14   15:4, ECF No. 488; Tr. at 6:5-8:2, 9:16-12:2, ECF No. 489. Co-conspirators Minda San Nicolas

15   and Juanita Capulong testified about counting the proceeds held by the Guam Shrine Club from

16   Hafa Adai Bingo with Christine and Art Chan. *E.g.*, Tr. at 42:6-42:10, ECF No. 493. The

17   Government introduced exhibits that showed permits issued to Guam Shrine Club by the

18   Department of Revenue and Taxation to conduct bingo and the gross deposits of bingo proceeds

19   collected and held (accompanied by analyses of those accounts). *E.g.*, Gov't Exs. 1, 4, 6, 109;

20   *see also* Gov'ts Ex. 107 (identifying stipulated-to financial records). The Government also

21   introduced advertisements, such as a YouTube video and a newspaper article, that advertised the

22   Hafa Adai Bingo, the bingo games, and the prizes. *E.g.*, Gov'ts Exs. 78, 79. The list goes on.

23       Defendant Marasigan does not address this evidence. Instead, he re-argues points that the

24

court previously rejected. As to his first argument, the court has already held that bingo games can constitute illegal gambling on Guam under 9 GUAM CODE ANN. § 64.10(a). *E.g.*, Order, at 1-2, ECF No. 380. The court has also held that 9 GUAM CODE ANN. § 64.70(a) provides an exception to that prohibition, which is to be interpreted as an affirmative defense. *Id.* As to Defendant Marasigan's second argument, the Government's evidence and the court's jury instructions are consistent with the court's prior ruling that the Government could not introduce—and the jury should not consider—evidence of whether the permits to conduct gambling activities were properly issued or should have been revoked by the Director of the Department of Revenue and Taxation. *See* Order at 1 n.1, ECF No. 380; Jury Instr. at 14, 18, ECF No. 527.[10] The Government did not introduce evidence to prove that point and, instead, submitted evidence sufficient for a rational jury to find that the bingo games constituted illegal gambling in Guam.

Relatedly, the Government argues that in finding the defendants guilty of conspiracy to operate an illegal gambling business, the jury "considered and rejected" the defendants' affirmative defense. *See* Opp'n at 2, ECF No. 567. The court agrees. If the jury found the defendants guilty of Count 1, the jury was instructed to consider whether the defendants should be found not guilty because they were entitled to the affirmative defense. Jury Instr. No. 11, ECF No. 527. Because Defendant Marasigan does not appear to dispute the evidence presented to the jury on the defendants' affirmative defense, the court will only address this point briefly. A

---

[10] Additionally, Defendant Marasigan's attempt to analogize the statutory prohibition of gambling activities in Guam to driving being legal in Guam is inapposite. The court is not aware of a statute that prohibits driving at large. Rather, what is more commonly prohibited is driving without a license, where the absence of a license is necessary to proving the offense. Here, there is no statute that states that gambling is legal. Instead, the statute *prohibits* gambling activities, subject to a number of exceptions. *See* 9 GUAM CODE ANN. §§ 64.10(a), 64.70. Regardless, Defendant Marasigan fails to adequately explain how his analogy relates to the evidence that the Government did or did not present.

1   jury's verdict is entitled to substantial deference, particularly given that it is "the exclusive

2   function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and

3   draw reasonable inferences from proven facts." *See United States v. Dreitzler*, 577 F.2d 539, 545

4   (9th Cir. 1978) (quotation omitted). The Government introduced ample evidence that would

5   allow a rational jury to conclude that the defendants were not entitled to the affirmative defense

6   claimed. For example, although the Government introduced evidence of the permits issued to the

7   Guam Shrine Club to conduct bingo games, the Government also introduced evidence of the

8   gaps in time periods between those permits, accompanied by related testimony from agent Dawn

9   Wandschneider.[11] *See, e.g.*, Gov't Exs. 1, 109. Co-conspirators Won Sun Min, Minda San

10  Nicolas, and Juanita Capulong testified about being approached by Defendant Marasigan to

11  invest in or provide services to Hafa Adai Bingo and how they would be paid, this was further

12  supported by checks and financial statements showing the same. *See, e.g.*, Tr. at 12:10-14:5, ECF

13  No. 493; Gov't Exs. 12, 14, 15, 16, 17, 18, 20, 21. Bingo player Geraldine Borja also testified

14  about Defendant Marasigan being the "manager" of Hafa Adai Bingo because "[e]verybody

15  saying he was." Tr. at 11:17-12:17, 27:15-29:2, ECF No. 488.

16          In short, Defendant Marasigan's reliance on old arguments without addressing the

17  evidence presented at trial or the jury instructions provided does not warrant judgment of

18  acquittal on Count 1. Viewing the evidence in the light most favorable to the Government, the

19  evidence presented at trial would allow any rational trier of fact to find that the bingo games

20  constituted illegal gambling in Guam. Therefore, Defendant Marasigan's motion for judgment of

21  acquittal on Count 1 is **DENIED**.

---

23  [11] The jury was also instructed on how to address the duration of the permits to conduct bingo games given the
    inconsistency of permit durations and the provisions in 9 GUAM CODE. ANN. § 64.70(c)(1)(B)(i). Jury Instr. at 18,
24  ECF No. 527.

### 2. Conspiracy to Commit Wire Fraud

For the jury to have found the defendants guilty of conspiracy to commit wire fraud, it had to find that the Government proved both of the following beyond a reasonable doubt:

> First, beginning on or about March 2015, and ending on or about December 31, 2021, there was an agreement between two or more persons to commit wire fraud as charged in the superseding indictment;
>
> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

Jury Instr. No. 22, ECF No. 527; *see also* 18 U.S.C. § 1349. The court instructed the jury on the elements of 18 U.S.C. § 1343, as the object of the conspiracy. Jury Instr. No. 23, ECF No. 527. The instruction stated:

> First, a person knowingly participated in, devised, or intended to devise a scheme or plan to defraud bingo players for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises. Deceitful statements of half-truths may constitute false or fraudulent representations;
>
> Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, bingo players to part with money or property;
>
> Third, the person acted with the intent to defraud, that is, the intent to deceive and cheat bingo players; and
>
> Fourth, the person used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

*Id.* The instruction explained that the jury "may consider not only a person's words and statements but also the circumstances in which they are used as a whole." *Id.* The instruction also explained that misrepresentations must "deceive the victim about the nature of the bargain." *Id.*

Defendant Art Chan argues that the court should grant judgment of acquittal on Count 65 for two reasons: (1) he "never contemplated nor caused actual harm" because the bingo players

1   "received exactly what they paid for" and were not deceived about the nature of the bargain; and

2   (2) he "never made a misrepresentation about the bingo games" (i.e., there was no evidence of a

3   misrepresentation about where the proceeds would go). Mot. at 5, ECF No. 554. In opposition,

4   the Government argues that the evidence showed that "[t]he defendants misled bingo players into

5   believing that their money would be used to fulfill the Guam Shrine Club's . . . charitable

6   mission," as evidenced by distribution checks to co-conspirator Won Sun Min and Defendant

7   Marasigan, as well as Defendant Marasigan's diversion of bingo proceeds to himself, Defendant

8   Christine Chan and co-conspirators Juanita Capulong and Minda San Nicolas. Opp'n at 3, ECF

9   No. 566. The Government also argues that the evidence clearly shows that a misrepresentation

10  occurred. *Id*. at 4. In support, the Government identifies evidence that shows Defendant Art

11  Chan's position as Vice President and President of the Guam Shrine Club, that Guam Shrine

12  Club established Hafa Adai Bingo to conduct bingo games for a charitable purpose, and that

13  Guam Shrine Club contracted with Defendant Marasigan's company, Ideal Ventures, which then

14  used the proceeds to make payments to co-conspirators and Defendant Christine Chan. *Id.* The

15  Government also identifies testimony from co-conspirators Alfredo D. Leon Guerrero and

16  Juanita Capulong about how the defendants routinely attended the bingo games and that

17  Defendant Art Chan would "meet and greet bingo players if he wasn't otherwise helping

18  Christine Chan count the money in the back room." *Id.* Finally, the Government identifies

19  advertisements issued by Guam Shrine Club about fundraising for a charitable purpose through

20  Hafa Adai Bingo. *Id.* (citing Gov't Exs. 77-3, 78-2). In reply, Defendant Art Chan reemphasizes

21  his argument that the Government failed to prove harm because "if the bingo players knew that

22  the representations were false, they would not have spent their money," and "[w]ithout this

23  proof, there could be no injury." Reply at 2, ECF No. 572 (describing testimony from bingo

24

players that "they would have played even if they knew some of the monies did not go to the charitable purpose"). Defendant Art Chan also argues that the Government failed to prove materiality, i.e., "but-for the representations made by Mr. Chan and other defendants, the bingo players would not have participated and spent money at the bingo games." *Id.* at 3 (citing portions of the bingo players' testimony). Finally, Defendant Art Chan argues that the fact that some of the proceeds went to a charitable purpose defeats the Government's argument about the bingo games not being conducted for a charitable purpose and, therefore, no reasonable juror could have concluded otherwise. *Id.* at 4.

The court agrees with the Government. Here, the Government was required to prove a conspiracy to commit wire fraud. In doing so, "[t]he Government need not provide direct evidence of all the elements of the crime; circumstantial evidence and reasonable inferences drawn therefrom can be sufficient to sustain a conviction." *United States v. Castro*, No. 2:19-cr-00295-GMN-NKJ, 2023 WL 4052429, at *4 (D. Nev. June 15, 2023) (citing *United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004); *United States v. Reyes-Alvarado*, 963 F.3d 1184, 1188 (9th Cir. 2012)). In the context of a conspiracy charge, an agreement may be inferred from circumstantial evidence. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). Although "mere association with members of the conspiracy" is insufficient, once a conspiracy is established, only a slight connection is necessary to convict the defendant. *Id.* The relevant inquiry at this stage is "whether the jury could reasonably arrive at its verdict," "not whether the evidence excludes every hypothesis except guilt." *Id.* (citing *United States v. Dinkane*, 17 F.3d 1192, 1996 (9th Cir. 1994)).

Considering the evidence as a whole, rather than in isolation, and even if the Government introduced a large body of circumstantial evidence on the points identified by Defendant Art

1  Chan, the court finds that the evidence presented to the jury was sufficient for it to determine

2  whether the defendants were guilty of conspiracy to commit wire fraud. It is within the sound

3  discretion of the jury to weigh the credibility of the witnesses, such as the bingo players, and to

4  situate their testimony in the broader context of the evidence presented. Here, the jury evaluated

5  evidence presented about Guam Shrine Club's and others' representations about Hafa Adai

6  Bingo and Guam Shrine Club's charitable purpose. *E.g.*, Gov't Exs. 1, 77-79, 102; Tr. at 15:13-

7  15:25, 63:9-68:12, 74:8-77:3, ECF No. 465. For example, bingo player Geraldine Borja testified

8  about the bingo games' charitable purpose and how she played there because she "really like[d]

9  the non-profit and they were helping the Shriners, helping the children." Tr. at 7:16-13:25, 20:3-

10  24:20, 27:7-29:20, ECF No. 488; *see also* Tr. at 6:19-7:7, 8:12-10:4, 13:3-15:25, 17:7-18:4,

11  26:13-27:13, 31:3-31:17, ECF No. 489. The jury evaluated evidence of Defendants Art Chan and

12  Marasigan's roles in running the Guam Shrine Club and Hafa Adai Bingo and the payments to

13  Defendant Christine Chan and her role in counting proceeds. *E.g.*, Gov't Exs. 13-17, 22-23, 33,

14  35, 53-54, 76, 103; Tr. at 27:20-28:4, 30:8-31:22, 47:19-49:6, 81:18-87:20, ECF No. 465; Tr. at

15  Tr. at 7:16-13:25, ECF No. 488. The jury also evaluated the substantial amounts of money

16  proven to *not* have gone to the Aloha Shriners for the transportation of children even if some

17  children had been sent to Hawai'i for treatment. *See, e.g.*, Gov't Exs. 12-33, 35, 37-39, 52-54,

18  76, 81-92, 103-104. 108-09; Tr. at 88:10-90:11, 166:4-170:21, ECF No. 465. The evidence

19  provided a sufficient basis for the jury to conclude that the defendants were guilty of conspiracy

20  to commit wire fraud and, more specifically, that the bingo players did not "receive exactly what

21  they paid for" and that misrepresentations were made about how bingo proceeds would be used.

22  The court does not find that the bingo players' testimony in isolation provides a sufficient basis

23  to conclude that acquittal is warranted on Count 65.

24

1    In short, the evidence presented at trial would allow any rational trier of fact to find the

2    essential elements of conspiracy to commit wire fraud beyond a reasonable doubt. Therefore,

3    Defendant Art Chan's motion for judgment of acquittal on Count 65 is **DENIED**.

4    **B.  Motions for New Trial**

5    Defendant Art Chan argues that a new trial is required for three reasons: (1) the

6    Government constructively amended the Superseding Indictment by "shifting its theories of guilt

7    never proved to any Grand Jury" for Counts 1 and 65; (2) the Government argued, and the court

8    did not stop it from arguing, theories regarding the Defendants' receipt of large sums of money

9    as proof of guilt that was outside the scope of the Superseding Indictment, which amounted to a

10   fatal variance; and (3) the court "engaged in *ex parte* communication with the jury" when it

11   received a thank-you note from the jurors. Mot. at 5-12, ECF No. 547; Mot. at 8-10, ECF No.

12   554. These motions are joined by Defendants Marasigan and Christine Chan.[12] ECF Nos. 550,

13   555, 556, 558. Defendant Marasigan also moves for a new trial on the basis that the thank-you

14   card from the jurors constitutes jury misconduct.[13] *See* Mot. at 2-4, ECF No. 557. This motion is

15   joined by Defendant Art Chan. ECF No. 561.

16   **1. Constructive Amendment and Fatal Variance: Counts 1 and 65**

17   A constructive amendment occurs when the government or the court, either literally or in

18   effect, alters the charging terms of the indictment "after the grand jury has last passed upon

19

20   [12] As noted above, Defendant Christine Chan joined all but the first full paragraph on page nine of the motion. ECF No. 555.

21   [13] It is unclear whether Defendant Marasigan is also arguing that a new trial is warranted on the basis that bingo does

22   not constitute illegal gambling in Guam. *See* Mot., ECF No. 557. However, for the reasons stated above, this position is contrary to the court's prior holdings and does not constitute an exceptional case where "the evidence preponderates heavily against the verdict" or "a serious miscarriage of justice may have occurred." *Pimentel*, 654

23   F.2d at 545; *Alston*, 974 F.2d at 1211-12. Furthermore, to the extent that Defendant Marasigan is moving to have another judge resolve his pending motion, the court denies that request as it is both improperly pled and unsupported

24   by law.

them." *United States v. Adamson*, 291 F.3d 606, 614 (9th Cir. 2002); *see also United States v. Bellot*, 113 F.4th 1151, 1154 (9th Cir. 2024) (quoting *United States v. Singh*, 995 F.3d 1069, 1078-79 (9th Cir. 2021)). A variance occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment." *Adamson*, 291 F.3d at 614; *see also Bellot*, 113 F.4th at 1154 (citing *Singh*, 995 F.3d at 1078-79). Because "[t]he line between a constructive amendment and a variance is at times difficult to draw," the Ninth Circuit, in *Adamson*, clarified how each has been found. A constructive amendment may exist where "(1) 'there is complex of facts [presented at trial] distinctly different from those set forth in the charging instrument,' or (2) 'the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.'" *Adamson*, 291 F.3d at 615 (quoting *United States v. Von Stoll*, 726 F.2d at 586) (collecting cases). "Although a constructive amendment usually involves a complex of facts, we have generally found a variance where the indictment and the proof involve only a single, though materially different, set of facts." *Id*. (collecting cases).

Defendant Art Chan argues both constructive amendment and fatal variance on Counts 1 and 65. *See* Mot. at 5-10, ECF No. 547; Mot. at 8-10, ECF No. 554. Both theories include a common argument: that the Government argued and relied on evidence of the large sums of money earned in this case to prove that Defendant Art Chan (and the other defendants) committed conspiracy to operate illegal gambling and conspiracy to commit wire fraud, which is different from how those counts are charged in the Superseding Indictment. *E.g.*, Mot. at 6, ECF No. 547; Mot. at 9, ECF No. 554. For Count 1, Defendant Art Chan also specifies that the charges in the Superseding Indictment shifted from permit violations under 9 GUAM CODE ANN. § 64.70 and the improper filing of Form 990s to excessive amounts of money earned as proof of

illegal gambling activities. *See* Mot. at 6, ECF No. 547. For Count 65, Defendant Art Chan argues that instead of proving that he misrepresented that bingo games were conducted for a charitable purpose, the Government argued that the defendants failed to disclose material facts to the bingo players about how the proceeds would be used instead of misrepresenting the charitable purpose. *E.g.*, Mot. at 9, ECF No. 554. The Government disagrees with these arguments. Broadly, the Government argues that essential elements of the crimes charged in the Superseding Indictment were accurately given in the jury instructions, and that the proof offered at trial aligned with the charged conspiracies. *See* Opp'n at 3, ECF No. 562; Opp'n at 6-7, ECF No. 566.

The court agrees with the Government that there was no constructive amendment or variance on Count 1 or Count 65 because the evidence offered at trial was consistent with the conduct charged in the Superseding Indictment.[14]

### i. Count 1: Conspiracy to Operate Illegal Gambling Business

In Count 1, the Government charged the defendants with conspiracy to operate an illegal gambling business. Superseding Indictment at 3-4, ECF No. 212. The Superseding Indictment specified that the objects of the conspiracy were that the defendants would "unjustly enrich themselves and others by operating an illegal gambling business under the guise of charitable and civic fundraising," Defendants Marasigan and Christine Chan would "maintain[] and control[] financial accounts under their names and business entities," Defendant Art Chan would

---

[14] Defendant Art Chan also argues that there was a fatal variance *because of* evidentiary spillover on Count 1. Mot. at 9-10, ECF No. 547. As the rules articulated by Defendant Art Chan make clear, evidentiary spillover is not a *cause* for fatal variance, but rather a symptom of it that would make the variance prejudicial. *See* Mot. at 8, ECF No. 547. Defendant Art Chan also does not appear to argue that a new trial is warranted because of prejudicial spillover. *E.g.*, *United States v. Lazarenko*, 564 F.3d 1026, 1044 (9th Cir. 2008). Accordingly, the court will not independently evaluate the merits of such argument. However, because the court finds that there was no variance, the court notes that it generally agrees with the Government that the jury instructions adequately addressed the risk by instructing the jurors to consider each defendant and each count separately. *See* Jury Instr. No. 25, ECF No. 527.

1   be an "authorized signator[y] on various [Guam Shrine Club] bank and credit union accounts

2   which they used to pay profit distribution checks to co-conspirators, and Defendant Marasigan

3   would pay co-conspirators from funds derived from illegal gambling," among other objects. *Id.*

4   at 4-5. Alleged overt acts in furtherance of this conspiracy included that Defendants Marasigan

5   and Art Chan falsely represented that Defendant Marasigan "would act as a consultant when the

6   [Guam Shrine Club] hosted bingo fundraisers, when in fact [Defendant Art Chan] well knew that

7   [Defendant Marasigan] and others would conduct, finance, manage, supervise, or direct the

8   [Guam Shrine Club]'s bingo fundraising activities," that Defendant Art Chan opened checking

9   accounts in the Guam Shrine Club's name and "executed a five-year term Bingo Sponsorship

10  Agreement with Won Sun Min to conduct bingo games at the Guam Greyhound Park in

11  Tamuning," and that Defendants Marasigan and Christine Chan "invested monies in the

12  operation of Hafa Adai Bingo." *Id.* at 5-7.

13      Although the Superseding Indictment also alleged overt acts related to the signing and

14  submission of Form 990s and referenced certain subsections of 9 GUAM CODE ANN. § 64.70 in

15  its introduction, the fact that the Government did not present evidence in support of these

16  allegations and, instead, introduced evidence well within the scope of the charged offense, its

17  objects, and its overt acts makes clear that the Government did not present a distinctly or

18  materially different set of facts at trial than those alleged in the Indictment. *See id.* at 1-7. For

19  example, the Government presented evidence about the Guam Shrine Club's charitable purpose

20  through fundraising applications, advertisements, and various witness testimony. *E.g.*, Gov't

21  Exs. 1, 77-79; Tr. at 16:3-20:3, ECF No. 431; Tr. at 7:16-13:17, 20:3-21:25, ECF No. 488. The

22  Government also presented evidence on the investments by co-conspirators and Defendants

23  Marasigan and Christine Chan in Guam Shrine Club and the payments made to co-conspirators

24

and Defendants Marasigan and Christine Chan and their entities from the bingo proceeds. *E.g.*, Gov't Exs. 12-39, 53-54, 82-92; Tr. at 46:23-62:15, 88:24-90:11, ECF No. 465. The Government then presented evidence of Defendant Art Chan's status as an authorized signatory for Guam Shrine Club through various exhibits and Guam Shrine Club's arrangement with Defendant Marasigan to manage the bingo games through various exhibits and testimony. *E.g.*, Gov't Ex. 76; Tr. at 30:10-31:6, 122:5-123:18, ECF No. 465. And the Government presented evidence of a sponsorship agreement for the bingo games with co-conspirator Won Sun Min. *E.g.*, Gov't Ex. 51; Tr. at 7:16-13:17, 20:3-21:25, ECF No. 488.

The evidence presented at trial is consistent with the conduct charged in Count 1 of the Superseding Indictment, and the court finds that the Government's case did not stray from the charges by substantially altering the terms of the Superseding Indictment or presenting materially different evidence. Furthermore, the jury instructions clearly state the applicable law and do not support Defendant Art Chan's view that the Government proved a crime that was different than that presented to the Grand Jury. *See* Jury Instr. Nos. 9-10, ECF No. 527; Superseding Indictment at 3-7, ECF No. 212. Accordingly, Defendant Art Chan's motion for new trial is **DENIED** as to Count 1.

### ii. Count 65: Conspiracy to Commit Wire Fraud

In Count 65, the Government charged the defendants with conspiracy to commit wire fraud. Superseding Indictment at 15, ECF No. 212. The Superseding Indictment alleged that the objects of the conspiracy included that the defendants would "unjustly enrich themselves and others by fraudulently obtaining bingo and conspiracy to commit wire fraud proceeds." *Id.* at 16. The Superseding Indictment also alleged that Defendant Art Chan "misrepresented and caused to misrepresent to Guam DRT that the purpose of Guam Shrine Club's bingo games was to provide

1 transportation of ill children to Shriner's Hospital in Hawaii," as well as that Defendants

2 Marasigan, Art Chan, and Christine Chan "misrepresented and caused to misrepresent to

3 potential and current bingo players that the bingo games were conducted to support a charitable

4 purpose." *Id.* The allegations included that Defendant Marasigan's management of the bingo

5 games was part of the conspiracy and that interstate wire communications were facilitated

6 through a payment processor and by sending money to and from various financial accounts. *Id.*

7 The Superseding Indictment then alleges several overt acts, including that Defendant Art Chan

8 caused applications for bingo permits to be submitted to the Department of Revenue and Tax to

9 conduct bingo games between 2016 and 2020, and that Defendant Christine Chan and co-

10 conspirators Minda San Nicolas and Juanita Capulong counted money for the bingo payouts. *Id.*

11 at 16-17.

12   At trial, the Government did not substantially alter its theory of conspiracy to commit

13 wire fraud or present a distinctly different set of facts from the allegations in Count 65. In fact,

14 there was ample evidence presented to the jury on these exact allegations. For example, the

15 Government introduced evidence about the proceeds distributed to co-conspirators Won Sun

16 Min, Minda San Nicolas, and Juanita Capulong and Defendants Marasigan and Christine Chan.

17 Gov't Exs. 12-23. The Government introduced evidence of the bingo permits applied for and

18 issued by the Guam Department of Revenue and Taxation that indicated Guam Shrine Club's

19 charitable purpose and the net proceeds received from Hafa Adai Bingo and how those funds

20 were collected and used. *E.g.*, Gov't Exs. 1-2, 4, 6, 81-86, 88-92; 88:24-90:11, 122:5-123:18,

21 ECF No. 465. The Government then introduced evidence of Defendant Art Chan's signing of

22 checks and other documents on behalf of the Guam Shrine Club regarding the use of funds from

23 the bingo games and of Defendant Marasigan's management of the bingo games. *E.g.*, Tr. at

24

1    30:10-31:6, 46:23-62:15, ECF No. 465. The Government introduced further evidence about the

2    charitable purpose of the bingo games, and co-conspirators testified about Defendants Christine

3    Chan and Art Chan counting bingo proceeds with co-conspirators Minda San Nicolas and Juanita

4    Capulong. *E.g.*, Gov't Exs. 77-79; Tr. at 7:16-13:25, 20:3-24:20, ECF No. 488; Tr. at 6:19-7:7,

5    8:12-10:4, 13:3-15:25, ECF No. 489. Unlike Defendant Art Chan contends, the Government did

6    not rely exclusively on the amount of bingo proceeds from the Guam Shrine Club during trial to

7    prove conspiracy to commit wire fraud. The Government also did not present theories that

8    strayed from the conduct charged in Count 65. Even when the court does not view the evidence

9    in the light most favorable to the verdict and evaluates witness credibility and the weight of the

10   evidence on its own, the court finds that the evidence presented by the Government was

11   sufficiently tailored to the charges in the Superseding Indictment and does not warrant granting a

12   new trial.

13           Moreover, an indictment "need not specify the theories or evidence upon which the

14   government will rely." *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993). The

15   Government may also forgo "allegations which are unnecessary to an offense this is clearly

16   contained within [the indictment]." *United States v. Miller*, 471 U.S. 130, 136 (1985). Any

17   arguments by the Government on the issue of whether Defendant Art Chan or the other

18   defendants should have disclosed certain facts about the purpose of the bingo games does not

19   literally or effectively substantially alter the terms of the Superseding Indictment, nor does it

20   present facts materially different from those alleged. Furthermore, the jury instructions clearly

21   instruct the jury on the applicable law, particularly with respect to how a misrepresentation must

22   go to the nature of the bargain. Jury Instr. No. 22-23, ECF No. 527.

23           Therefore, the court does not find sufficient reason or support to conclude that the

24

Government constructively amended the Superseding Indictment during trial on Count 65.

Accordingly, Defendant Art Chan's motion for new trial based on constructive amendment is

**DENIED** on both counts.

### 2. Thank-you Card

Finally, Defendant Art Chan argues that the court must grant a new trial because "the

[c]ourt engaged in *ex parte* communication with the jury" when it received a thank-you card

from the jurors before they retired to deliberate. Mot. at 10, ECF No. 547. In support, he argues

that the thank-you card demonstrates that the jurors "formed an opinion about the case prior to

reaching the verdict" by using the term "eternity" in reference to the length of the trial. *Id.* at 11.

Defendant Art Chan also requests an evidentiary hearing if the court determines that the thank-

you card does not constitute an *ex parte* communication. *Id.* Defendant Marasigan, without citing

a single case, similarly argues a new trial is warranted on this ground, but more fervently asserts

that an evidentiary hearing is necessary to fill in "the factual blanks." Mot. at 3-4, ECF No. 557.

The Government opposes these motions, arguing that the thank-you card does not warrant a new

trial because it "does not pertain to 'any fact in controversy or any law applicable to the case.'"

Opp'n at 4-5, ECF No. 562 (citing *Rushen*, 464 U.S. at 121); *see also* Opp'n at 2-3, ECF No.

567. In reply, Defendant Art Chan also notes that the printed statement on the back of the thank-

you card was "Published by Christian Art Publishers" and "Cover designed by Christian Art

Gifts" presents additional concerns about the influence of "Christianity or religion" during

deliberations. Reply at 4, ECF No. 568.

"The Sixth Amendment guarantees a criminal defendant a fair trial by a panel of

impartial jurors who can 'lay aside [their] impression[s] or opinion[s] and render a verdict based

on the evidence presented in court.'" *Brown v. Attorney General for State of Nevada*, 140 F.4th

1069, 1075 (9th Cir. June 12, 2025) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)).

However, a new trial is not required "every time a juror has been placed in a potentially

compromising situation . . . because it is virtually impossible to shield jurors from every contact

or influence that might theoretically affect their vote." *Rushen*, 464 U.S. at 118. "[N]ot every

incident of a juror's ex parte contact . . . constitute[s] actual prejudice." *United States v. Maree*,

934 F.2d 196, 201 (9th Cir. 1991) (discussing heightened standard required new trial based on *ex

parte* contact where the contact does not "pertain to any fact in controversy or any law applicable

to the case'"), *abrogated on other grounds*, *United States v. Adams*, 432 F.3d 1092 (9th Cir.

2006).

　　　　When an *ex parte* communication relates to some aspect of the trial, the trial judge

generally should disclose the communication to counsel for all parties. *Id.* at 119. The failure to

do so "can normally be determined by a post-trial hearing," whereby the determination to hold a

hearing is decided by considering "the content of the allegations, the seriousness of the alleged

misconduct or bias, and the credibility of the source.'" *United States v. Brande*, 329 F.3d 1173,

1176-77 (9th Cir. 2003) (citation omitted). "If these factors warrant holding a hearing, a hearing

should be held unless the court already knows the 'exact scope and nature' of the improper

contact." *Rushen*, 464 U.S. at 118 (quoting *United States v. Saya*, 247 F.3d 929, 935 (9th Cir.

2001).

　　　　Although atypical, the thank-you card here was innocuous; it was a standalone

communication from the jurors delivered to court personnel, that was disclosed to the parties,

expressed gratitude, and did not refer to "any fact in controversy or law applicable to the case."

*Rushen*, 464 U.S. at 457. The card is not remotely similar to cases where jurors' *ex parte*

communications would constitute a prosaic, trial, or egregious error. *See id.*; *Brown*, 140 F.4th at

1075-76 (collecting cases on communications that constitute each level of error). In fact, even in cases discussing *ex parte* communications constituting prosaic errors, the thank-you card here does not come close to the form or content of the communications discussed therein. *E.g.*, *id.* (citing *Rushen*, 464 U.S. at 121; *United States v. Dutkel*, 192 F.3d 893, 895 (9th Cir. 1999); *Godoy v. Spearman*, 861 F.3d 956, 967 (9th Cir. 2017)).

The thank-you card also does not communicate any clear prejudice against the defendants, nor does it evince a "potentially compromising situation" where the jurors were contacted or influenced in their deliberations. At most, the card refers to the length of the jurors' term of service ("Feb 25 - Eternity")—perhaps a reference to the various mid-trial continuances in this case which, out of an abundance of caution, would warrant disclosure to the parties. ECF No. 539-1; *e.g.*, ECF Nos. 410, 415; *see also Rushen*, 464 U.S. at 118. Nonetheless, defendants exaggerate the risk of prejudice arising out of this statement by failing to address how the thank-you card relates to the facts or law in this case. Defendants also speculate about how the reference to "Eternity" and the card's publisher could potentially weigh on jury's consideration of the evidence introduced and the law as they were instructed. However, on multiple occasions, the court instructed the jury "not [to] hold [the continuances] against either of parties or their attorneys" in addition to instructing them at each recess to "keep an open mind" and to "not form of express any opinion on this case" or "speak to anyone on any subject connected with this trial." *E.g.*, Tr. at 18:21-19:5, ECF No. 450; Tr. at 20:5-21:3, ECF No. 442; *cf. Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (discussing "the rule that juries are presumed to follow their instructions"). Religion also does not play a role in facts or law of this case, nor is the court aware of any significant reference to religion during trial. The court clearly instructed the jurors on what they may consider in reaching their verdict. Jury Instr. Nos. 1, 5-7, 30, ECF No. 527.

1    Therefore, the court does not find that the thank-you card exposes the defendants to any risk of

2    actual prejudice.

3         For similar reasons, the court finds that an evidentiary hearing is not required. The

4    defendants' arguments make no reference to the analysis required to determine whether a hearing

5    is warranted. In so deciding, the court must consider the content of the allegations, the

6    seriousness of the alleged misconduct or bias, and the credibility of the source. *See Brande*, 329

7    F.3d at 1176-77. Here, the allegations of bias arise out of (1) the length of the trial, and (2) the

8    publisher of the thank-you card. *See* Mot. at 11, ECF No. 547; Reply at 4, ECF No. 568. The

9    court has already discussed why these allegations do not plausibly allege a risk of actual

10   prejudice or concern any fact or law involved in the case. Furthermore, the court also does not

11   find that the allegations are serious or credible. A thank-you card that expresses gratitude for

12   "kindness," "generosity & care," and "delicious snacks," and makes a reference to the length of

13   the trial, does not show even a remote degree of seriousness regarding allegations of actual

14   prejudice.[15] Furthermore, beyond speculating about how the thank-you card is prejudicial, the

15   defendants do not assert credible allegations in light of the court's oral disclosure, the clerk's

16   written disclosure, the cautionary instructions given during trial, and the jury instructions given

17   at the end of trial. *See* Clerk's Notice, ECF No. 539; Tr. at 4:5-4:16, ECF No. 541; Tr. at 18:21-

18   19:5, ECF No. 450; Tr. at 20:5-21:3, ECF No. 442; Jury Instr. Nos. 1, 5-7, 30, ECF No. 527. For

19   these reasons, the court does not find that an evidentiary hearing is warranted.

20        In short, the fact that the jurors wrote a thank-you card to the undersigned and Clerk's

21

22   _____

23   [15] The court notes that it is well-established that the court may provide "subsistence," such as snacks and meals
     when jurors are ordered to be kept together, as well as address other logistical matters relating to their service. *See*
     *generally* 28 U.S.C. § 1871(a), (e), (g); *United States v. Donahower*, 85 F. 547, 549 (8th Cir. 1898) (discussing

24   furnishment of meals to jurors after they have been charged and while they were confined).

Office staff before retiring to deliberate neither presents an "exceptional case in which the evidence preponderates heavily against a verdict" nor supports a conclusion that "a serious miscarriage of justice may have occurred." *Pimentel*, 654 F.2d at 545; *Alston*, 974 F.2d at 1211-12. Therefore, the motions for new trial on this ground are **DENIED**.

## V. Conclusion

For the reasons explained above, Defendant Art Chan and Defendant Marasigan's motions are **DENIED**.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Aug 18, 2025**